UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MUTUAL WORK COMP SOLUTIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.    3:23-CV-223-CEA-JEM |
| ) | |
| BARONHR, LLC, ) | |
| BARONHR WEST, INC., ) | |
| HUNTER STAFFING, INC., ) | |
| BARONHR HOSPITALITY, LLC, ) | |
| BARON TRANSPORT, LLC, ) | |
| LEGENDARY STAFFING, INC., ) | |
| LUIS E. PEREZ, and ) | |
| GUNNIN INSURANCE & RISK ) | |
| MANAGEMENT SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636 and the Rules of this Court.

Now before the Court is Plaintiff's Motion for Default Judgment [Doc. 103], which District Judge

Charles E. Atchley has referred to the undersigned for report and recommendation [Doc. 115].

On June 4, 2025, the Court ordered the parties to appear before the undersigned on

June 18, 2025 [Doc. 137]. The Court instructed Plaintiff to be prepared to address the sufficiency

of its allegations and damages [*Id.*]. The Court also directed the Clerk's Office to mail the Order

to Defendants at their last-known addresses [*Id.*].

On June 18, 2025, Attorney Brian Quist appeared on behalf of Plaintiff. Attorney Sarah

Matthews appeared on behalf of Defendant Gunnin Insurance & Risk Management Services, Inc.

Defendants BaronHR, LLC, BaronHR, West, Inc., Hunter Staffing, Inc., BaronHR Hospitality,

LLC, BaronTransport, LLC, Legendary Staffing, Inc., ("the Baron Entities") and Luis E. Perez

(collectively, "the Baron Defendants") did not appear. Following the hearing, Plaintiff filed additional materials in support of its motion [Doc. 141].

For the reasons more fully explained below, the Court recommends that the District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's motion [**Doc. 103**].

## I.      BACKGROUND

### A.      Allegations in the Amended Complaint

Plaintiff is an administrative service organization ("ASO"), which provides risk and claims management services, facilitates workers' compensation coverage, and procures workers' compensation insurance for employers [Doc. 17 ¶ 17]. The Baron Entities are employee staffing companies; they provide employees to work for its clients on a temporary or permanent basis [*Id.* ¶ 16]. Defendant Gunnin is an insurance brokerage firm owned by Valerie Gunnin ("Ms. Gunnin"), who holds herself out to be an expert in workers' compensation insurance [*Id.* ¶ 80].

In April 2021, the Baron Entities authorized Ms. Gunnin to contact INVO PEO, Inc. (a company related to Plaintiff) regarding administrative services and workers' compensation coverage [*Id.* ¶ 18]. Defendant Gunnin provided Plaintiff with data about the Baron Entities and handled their negotiations on invoices, rates, contracts, necessary information, payroll data, and reasons for non-payment [*Id.* ¶ 19]. The Baron Entities each agreed to receive services from Plaintiff and signed "ASO Agreements" [*Id.* ¶¶ 21–32]. Defendant Perez personally guaranteed the obligations of each Baron Entity under each Agreement [*Id.* ¶¶ 35–36].

Five of the Baron Entities entered ASO Agreements in August 2021, the last one in March 2022 [*Id*. ¶¶ 27–32]. The Baron Entities registered the employees covered by the ASO Agreements for whom Plaintiff would procure workers' compensation insurance [*Id.* ¶ 22]. Under the agreements, the Baron Entities were obligated to "submit required payroll data" in the

format designated by Plaintiff; to procure and maintain separately obtained workers' compensation coverage for any non-covered employee; pay for services provided by Plaintiff, based upon reports requested by Plaintiff; pay Plaintiff for the ASO services; pay amounts due and owing from any audits within thirty days of receipt of such invoice; cooperate in any audits and timely furnish all books and records to verify payroll; and dispute any invoices within ten days of receipt [*Id.* ¶ 34].

By September 2022, the Baron Entities fell behind on their payments to Plaintiff [*Id.* ¶ 37]. In October, Plaintiff agreed to a "workout plan" after numerous discussions [*Id.* ¶¶ 38, 83]. The Baron Entities executed a promissory note, agreeing to pay the unpaid invoices and to stay current on future invoices [*Id.* ¶ 38].

This plan failed, so in November 2022, the Baron Entities executed a new promissory note, superseding the first [*Id.* ¶ 39]. This plan failed too; on January 20, 2023, the Baron Entities executed the "Third Baron Note" (or "the Note"), superseding the first and second promissory notes [*Id.* ¶ 40]. Defendant Perez personally guaranteed the Baron Entities' obligations under the Note [*Id.* ¶ 41]. While the Baron Entities did make some payment to Plaintiff under the Third Baron Note, they failed to make the $100,000 weekly payments due May 12, 2023, and May 19, 2023, rendering them in default under the Third Baron Note as of May 12, 2023 [*Id.* ¶ 44]. All unpaid payments were accelerated and became due at that time [*Id.*]. As of May 12, 2023, the unpaid principal balance was $3,525,504.63 [*Id.*]. Due to "innumerable breaches," Plaintiff terminated the ASO Agreements effective May 8, 2023 [*Id.* ¶ 79].

The Third Baron Note captured various unpaid invoices and obligations due under the Baron ASO Agreements [*Id.* ¶ 45]. The "Post-Third-Baron-Note Obligations" include "invoices for continued ASO Services, required reimbursements expressly authorized by the ASO Agreements, and other reimbursements for Plaintiff's increased costs due to breach of the []

3

Agreements" by the Baron Entities [*Id.* ¶ 46]. The Amended Complaint attaches ledgers of each Baron Entity's account with Plaintiff for its obligations as of July 11, 2023, which shows "various unpaid invoices for ASO Services and related obligations that were sent . . . as well as the application of certain credits" [*Id.* ¶¶ 47, 49, 51, 53, 55 & 57]. Their obligations "continue and additional money owed . . . will be shown" [*Id.*].

As noted, pursuant to the ASO Agreements, "each Baron Entity [would] register[] with Plaintiff those employees who were to be accepted by Plaintiff and then covered by the ASO Agreements and applicable workers' compensation insurance procured by Plaintiff" ("covered employees") [*Id.* ¶ 22]. Plaintiff would then place the "covered employees" on one policy through Plaintiff's insurer, SUNZ Insurance Company ("SUNZ") [*Id.*]. Through this arrangement, Plaintiff leverages purchasing power to pass savings on to its customers like the Baron Entities [*Id.*]. Under the ASO Agreements, the Baron Entities were required to submit, "on a regular basis, accurate payroll reports for their [c]overed [e]mployees in the format Plaintiff required . . . or directed" [*Id.* ¶ 24]. According to Plaintiff, "accurate" information would "include[] properly classifying each [c]overed [e]mployee by work classification because some classifications bear a higher workers' compensation premium rate and state assessment rate" [*Id.*]. SUNZ would use the payroll reports to determine how much to charge Plaintiff for premiums and state assessments that Plaintiff would owe to SUNZ [*Id.* ¶ 25]. Plaintiff used the reports to "calculate each Baron Entity's premium and state assessment obligation to Plaintiff[,]" and Plaintiff would "invoice[] each Baron Entity, . . . determine the identity of the [c]overed [e]mployees for the processing and administering of any workers' compensation claims for those [c]overed [e]mployees, and assist . . . Plaintiff in addressing any audit by SUNZ of the Baron Entities' payrolls" [*Id.* ¶ 26].

On March 30, 2023, Plaintiff learned of the results from an audit conducted by SUNZ for the policy period October 1, 2021, to October 1, 2022 ("the First SUNZ Audit") [*Id.* ¶ 59]. Two Baron Entities—BaronHR West and Legendary Staffing—had underreported the quantity of employees or their compensation and misclassified employees [*Id.* ¶¶ 59–60]. The result was that Plaintiff owed more money to SUNZ for premiums and state assessments, which it would have to pay to SUNZ regardless of whether BaronHR West and Legendary Staffing paid Plaintiff's invoices [*Id.* ¶ 61]. Plaintiff also incurred increased administrative costs and expenses for non-covered employees who were the subject of workers' compensation claims [*Id.* ¶ 62]. "Plaintiff . . . had to pay SUNZ $730,688.69 in additional premiums attributable to BaronHR West, $169,252.26 in additional state assessments attributable to Baron HR West, $240,176.97 in additional premiums attributable to Legendary Staffing, and $51,324.69 in additional state assessments attributable to Legendary Staffing for a total of $1,191,442.61" [*Id.* ¶ 63].

According to Plaintiff, "[Defendant] Perez intentionally directed subordinates . . . to underreport the quantity of employees . . . or compensation and to misclassify employees to lower premium rates" [*Id.* ¶ 64]. Specifically:

(a) in reporting to Plaintiff what was supposed to be accurate payroll information, at the direction of Perez, BaronHR West and Legendary Staffing made representations to Plaintiff of present and/or past facts (i.e. the quantity of their employees, their compensations, and their work classifications) during the time period October 1, 2021, through October 1, 2022;

(b) the representations to Plaintiff about their employee numbers, compensation, and work classifications during the time period October 1, 2021, through October 1, 2022, by these two Baron Entities at the direction of Perez were false when made;

(c) these false representations to Plaintiff involved material facts because correct numbers of employees, their compensations, and their work classifications determined what these two Baron Entitles would owe in current workers' compensation premiums and state assessments;

5

(d) by directing these two Entities to underreport their employee numbers, compensations, and to misclassify employees to lower premium rates during the time period October 1, 2021, through October 1, 2022, Perez knew that the False Payroll Reporting sent to Plaintiff was false;

(e) Plaintiff did not know that the payroll numbers, erroneous compensations, and erroneous classifications for these two Baron Entities reported to it during October 1, 2021, through October 1, 2022, were false when made, and Plaintiff was justified in relying on the said payroll information reported to it by these Baron Entities during that time; and

(f) Plaintiff was damaged because it had to pay the First Audit Payment to SUNZ for these two Baron Entities in the amount of $1,191,442.61and incur increased administrative costs and expenses associated with Non-covered Employees being the subject of workers' compensation claims reported to Plaintiff for processing and in some cases for litigation defense.

[*Id.*].

Plaintiff asserts that at all material times, Defendant Perez was the employee, agent, owner, officer, and/or control person of BaronHR and Legendary Staffing, acting in a management capacity for them, and acting within the scope of his employment, control/ownership, and/or agency [*Id.* ¶ 65]. Plaintiff states that Defendant Perez knew that when SUNZ conducted its audits, Plaintiff would receive the bill for premiums and state assessments first because BaronHR West and Legendary Staffing purchased their workers' compensation insurance through Plaintiff and that Plaintiff would have to pay the bill [*Id.* ¶ 66]. BaronHR West and Legendary Staffing benefited from this false reporting, which Plaintiff claims was intentional, because it reduced cash outlays on premiums and state assessments [*Id.* ¶ 67]. These entities also attempted to negotiate with Plaintiff to pay less than what was owed [*Id.*].

On March 31, 2023, Plaintiff invoiced all the Baron Entities for the First SUNZ Audit [*Id.* ¶ 68]. Because they "held themselves out as a common enterprise, the [Invoice] consolidated the amounts attributable to each Baron Entity" [*Id.*]. Plaintiff states that Section 4(c) of the ASO

Agreements required the Baron Entities to pay the invoice amount within thirty days [*Id.* ¶ 70]. No Baron Entity has made any payment [*Id.*].

With respect to Defendant BaronTransport, LLC, the First SUNZ Audit reflected that it was entitled to a net credit of $7,336.21 [*Id.* ¶ 71]. Plaintiff states that this credit has been or will be applied to BaronTransport's unpaid obligation to Plaintiff under the Third Baron Note, any further Post-Third-Baron-Note Obligation for BaronTransport accruing and invoiced hereafter, and otherwise for any debt owed by BaronTransport [*Id.*].

The results of the First SUNZ Audit triggered an interim audit for the period October 1, 2022, through the filing of the date of the First Amended Complaint [*Id.* ¶ 72]. Plaintiff reached out to the Chief Financial Officer for the Baron Entities on March 30, 2023, requesting assistance and payroll information [*Id.* ¶ 72]. The Baron Entities did not respond, which is a breach of the ASO Agreements [*Id.* ¶ 73]. But based upon the results of the First SUNZ Audit and a preliminary review of the Baron Entity payroll information, Plaintiff asserts that they underrepresented the quantity of employees and/or their compensations and erroneously misclassified employees to lower premium rates [*Id.* ¶ 74]. Plaintiff asserts that Defendant Perez again intentionally directed subordinates at BaronHR and Legendary Staffing to underreport the quantity of employees or compensation and to misclassify employees to lower premium rates [*Id.* ¶ 75]. Specifically:

(a) in reporting to Plaintiff what was supposed to be accurate payroll information, at the direction of Perez, BaronHR West and Legendary Staffing made representations to Plaintiff of present and/or past facts (i.e. the quantity of their employees, their compensations, and their work classifications) during the time period October 1, 2022, through termination in May 2023;

(b) the representations to Plaintiff about their employee numbers, compensation, and work classifications during the time period October 1, 2022, through termination in May 2023, by these two Baron Entities at the direction of Perez were false when made;

(c) these false representations to Plaintiff involved material facts because correct numbers of employees, their compensations, and their work classifications determined what these two Baron Entitles would owe in current workers' compensation premiums and state assessments;

(d) by directing these two Entities to underreport their employee numbers, compensations, and to misclassify employees to lower premium rates during the time period October 1, 2022, through termination in May 2023, Perez knew that the Continued False Payroll Reporting sent to Plaintiff was false;

(e) Plaintiff did not know that the payroll numbers, erroneous compensations, and erroneous classifications for these two Baron Entities reported to it during October 1, 2022, through termination in May 2023, were false when made, and Plaintiff was justified in relying on the said payroll information reported to it by these Baron Entities during that time; and

(f) Plaintiff was damaged because it will soon have to pay SUNZ more money for additional premiums and state assessments when the Second SUNZ Audit is complete. These numbers will be shown at trial, but are expected to be millions of dollars. Plaintiffs will further incur increased administrative costs and expenses associated with Non-covered Employees being the subject of workers' compensation claims reported to Plaintiff for processing and in some cases for litigation defense.

[*Id.* ¶ 75].

Plaintiff asserts that at all material times Defendant Perez was the employee, agent, owner, officer, and/or control person of BaronHR and Legendary Staffing, acting in a management capacity for them, and acting within the scope of his employment, control/ownership, and/or agency [*Id.* ¶ 76]. Plaintiff states that Defendant Perez knew that when SUNZ conducted its audits, Plaintiff would receive the bill for premiums and state assessments first because BaronHR West and Legendary Staffing purchased their workers' compensation insurance through Plaintiff and that Plaintiff would have to pay the bill [*Id.* ¶ 77]. BaronHR West and Legendary Staffing benefited from this false reporting, which Plaintiff claims was intentional, because it reduced cash outlays on premiums and state assessments [*Id.* ¶ 78].

Plaintiff pleads breach of contract for non-payment of the Third Baron Note against the Baron Entities (Count One); breach of contract for the ASO Agreements against BaronHRWest, Inc. (Count Two), Legendary Staffing (Count Three), BaronHR, LLC (Count Four), and BaronHR Hospitality, LLC (Count Five); breach of contract for non-payment of the audit invoices against the Baron Entities (Count Six); breach of contract/guaranty on the Third Baron Note against Defendant Perez (Count Seven); breach of contract/guaranty on the ASO Agreements against Defendant Perez (Count Eight); fraud against Defendant Perez (Count Nine); vicarious liability against BaronHR West and Legendary Staffing (Count Ten); joint venture/common enterprise liability against Baron Entities (Count Eleven); and negligence against Defendant Guinn (Count Twelve) [*Id.* ¶¶ 91–155].

### B. Procedural History

Plaintiff filed suit in state court, and the Baron Defendants removed the action to this Court [Doc. 1].[1] Plaintiff amended its complaint [Doc. 17], which Defendants answered [Docs. 20, 21]. In July and August 2024, Plaintiff filed motions seeking summary judgment against Defendant Perez [Doc. 59], partial summary judgment against the Baron Entities [Doc. 64], and leave to amend its claims against Defendant Gunnin [Doc. 74].

Counsel for the Baron Defendants filed a motion to withdraw, which the undersigned granted [Docs. 36, 39]. They continued to be unrepresented by counsel despite the Court's order that they retain counsel [Docs. 46, 94]. The District Judge also ordered Defendant Perez to indicate whether he intended to obtain counsel or would proceed pro se [Doc. 46]. Neither the Baron

---

[1]     On January 21, 2025, Plaintiff filed suit in state court against Defendant Gunnin [Case No. 3:25-cv-82, Doc. 1-1 p. 1], which has been removed and consolidated with the 2023 case [Case No. 3:25-cv-82, Docs. 1 & 13; Case No. 3:23-cv-223, Doc. 125].

Defendants nor Defendant Perez complied with the Order. In addition, the Baron Defendants and Defendant Perez had not responded to several discovery orders or otherwise participated in the litigation [*See* Docs. 44, 52 & 67]. After warning that failure to comply could lead to sanctions, up to and including entry of default under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, in November 2024, the District Judge ordered that they show cause as to why a default should not be entered against them [Doc. 94].

Plaintiff responded and asked the Court to grant its motion for summary judgment rather than entering a default judgment [Doc. 96]. Plaintiff acknowledged that Rule 55 would allow it to apply for a default judgment but argued against this route because not all its claims are liquidated, and the motion for summary judgment sought a greater amount of damages than the complaint as Plaintiff computed the amount "with greater accuracy as things settled" [*Id.* at 2–3]. Plaintiff submitted that proceeding through Rule 55(b)(2) and conducting a hearing on unopposed damages seemed an "unwarranted protection" for the Baron Defendants [*Id.* at 6].

Neither the Baron Defendants nor Defendant Perez filed a response to the District Judge's Show Cause Order [Doc. 99 p. 1]. The District Judge therefore directed the Clerk to enter default against them [*Id.*]. The District Judge also declined to rule on Plaintiff's motions for summary judgment [*Id.* at 2–3]. The District Judge was not persuaded that these motions were "so straightforward" and noted that even if the Court granted the motions, it would likely need to hold a hearing to address damages, which cut against Plaintiff's argument that granting summary judgment in lieu of directing default would promote judicial efficiency [*Id.* at 2]. He also explained that the conduct of Baron Defendants warranted a sanction [*Id.* at 2–3]. Pursuant to Rule 16(f)(1)(C) and Rule 37(b)(2)(A), he therefore directed the Clerk of Court to enter a default against the Baron Defendants and ordered Plaintiff to file a motion for default judgment [*Id.* at 4].

The Clerk of Court entered default pursuant to Rule 55(a) [Doc. 100]. Plaintiff filed a motion for default judgment pursuant to Rule 55(b) [Doc. 103].

### C.    Hearing

At the hearing, the Court sought Defendant Gunnin's position on the motion. Defendant Gunnin confirmed that it does not oppose the entry of default judgment against the Baron Defendants at this time.

The Court asked Plaintiff to supplement its motion by identifying the allegations in the Amended Complaint that satisfy the elements of each claim for which it seeks default judgment. Plaintiff did so for each claim.

Regarding damages, Plaintiff offered an updated affidavit, which it filed after the hearing [Doc. 141]. Plaintiff acknowledged that prejudgment interest is in the Court's discretion and referenced *Myint v. Allstate Insurance Co.*, 970 S.W.2d 920 (Tenn. 1998). Plaintiff suggested a ten percent rate, which the parties had agreed to in the promissory note at issue. Plaintiff also stated that there has been inflation, and the post-judgment interest rate published by Tennessee courts is around nine or ten percent. Given the statutory cap on punitive damages and debate on its constitutionality, Plaintiff noted that the requested damages are the capped amount.

## II.    STANDARD OF REVIEW

Plaintiff moves for default judgment pursuant to Rule 55(b)(2). Rule 55(b)(2) applies if a plaintiff cannot demonstrate that its claims are for a sum certain, as here. In evaluating a motion for default judgment, the Court takes factual allegations regarding liability as true.[2] *Bogard v. Nat'l*

---

[2]    Some decisions, including within this District, explain that there are procedural requirements that must be met before a Court can grant default judgment under Rule 55(b)(2). "Procedurally, a plaintiff must show (1) the defendant was properly served with process; (2) the procedural obligations for default judgment under Federal Rule of Civil Procedure 55 have been fulfilled; (3) the defendant was served with notice at least seven days before the hearing on the

*Credit Consultants*, No. 1:12-CV-2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013) (citation omitted). The plaintiff bears the burden of showing that the well-pleaded factual allegations establish liability for each cause of action asserted for which the plaintiff seeks default judgment. *See IOU Cent., Inc. v. Kailani Tours Haw., LLC*, No. 1:20-CV-448, 2021 WL 806340, at *2 (N.D. Ga. Feb. 24, 2021) ("A plaintiff's burden at the default judgment stage is 'akin to that necessary to survive a motion to dismiss for failure to state a claim.'" (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)).

The plaintiff must also prove the amount of damages. *See Culp v. U.S. Star 39, LLC*, No. 1:20-CV-137, 2021 WL 6328371, at *1 (E.D. Tenn. Feb. 25, 2021) ("The party seeking default judgment bears the burden of establishing damages." (citation omitted)). In determining damages, "[t]he Court may rely on affidavits [and other materials] . . . without the need for a hearing." *Dirs. of the Ohio Conf. of Plasterers & Cement Masons Combined Funds, Inc. v. Akron Insulation & Supply, Inc.*, No. 5:16-CV-1674, 2018 WL 2129613, at *5 (N.D. Ohio May 8, 2018) (citation omitted).

---

motion for default judgment, if the plaintiff is seeking default against a defendant who has entered an appearance; (4) the defendant is not an infant or incompetent person; and (5) the defendant is not a member of the armed services who is entitled to protection under the Servicemembers Civil Relief Act." *AGCS Marine Ins., Co. v. AT Trucking Corp.*, No. 1:22-CV-313, 2023 WL 9290680, at *1 (E.D. Tenn. Dec. 20, 2023) (citation omitted), *report and recommendation adopted*, No. 1:22-CV-313, 2024 WL 188379 (E.D. Tenn. Jan. 17, 2024). Plaintiff has demonstrated the procedural requirements. The defaulting defendants were properly served with process, and pursuant to Judge Atchley's directive, in January 2025, the Clerk of Court entered a default against the Baron Defendants [Doc. 100]. Attorney Quist's affidavit assures the Court that Defendant Perez is not a minor, incompetent person, or in military service [Doc. 103-2 ¶ 3]. *See Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 815 (E.D. Tenn. 2006) (finding the plaintiff's attorney's "undisputed declaration satisfie[d] these [procedural] requirements" (footnote omitted)). Plaintiff sent notice of the motion and hearing through the Court's electronic filing system and served the Baron Defendants with the motion to their last-known address [Doc. 103 p. 16]. And the Court mailed the notice of the hearing to Defendants at their last-known address [Doc. 137].

## III.   ANALYSIS

For the reasons explained below, the undersigned recommends that the District Judge grant default judgment on Counts One through Ten in favor of Plaintiff. Plaintiff has shown that the factual allegations taken as true establish liability for each cause of action asserted. Plaintiff has also proven, through the Second Affidavit of Sammy Scott Goble ("Mr. Goble") [Doc. 141-1], who is Plaintiff's Chief Financial Officer, the amount of damages for each cause of action.

### A.   Contract Claims

Under Tennessee law,[3] "the essential elements of any breach of contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to breach; and (3) damages resulting from the breach." *Nat'l Fitness Ctr., Inc. v. Atlanta Fitness, Inc.*, 902 F. Supp. 2d 1098, 1105 (E.D. Tenn. 2012) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). For the reasons stated below, the undersigned recommends that the District Judge grant default judgment for each of Plaintiff's breach of contract claims and award Plaintiff damages.

#### 1.   Count One – Third Baron Note

Count One is breach of contract claim against all the Baron Defendants [Doc. 17 ¶¶ 91–96 & 122–26].[4] Plaintiff alleges that the Third Baron Note constitutes a contract between Plaintiff and the Baron Entities to pay the promissory note as required [*Id.* ¶¶ 41, 92]. As the allegations, which are taken as true, explain, the Baron Entities failed to make the May 12,

---

[3]   The undersigned assumes application of Tennessee law, as the ASO Agreements and Third Baron Note state they will be governed and interpreted in accordance with the laws of the State of Tennessee [*See, e.g.*, Doc. 17-1 p. 4; Doc. 17-7 p. 3].

[4]   Plaintiff does not seek default judgment against Defendant Hunter Staffing, LLC on Count One [Doc. 103 p. 3].

2023, $100,000.00 payment required by the Third Baron Note [*Id*. ¶¶ 44, 93]. The failure to make this payment was a default of the Third Baron Note, effective May 12, 2023 [*Id*.]. As such, the entire unpaid balance of the Third Baron Note in the amount of $3,525,504.63 was accelerated, as provided for in Paragraph II.D. of the Third Baron Note, and became due on May 12, 2023 [*Id*.].[5] According to Plaintiff, the Baron Entities have failed to pay the accelerated unpaid balance of the Third Baron Note, which constitutes breach [*Id*. ¶¶ 44, 94]. Plaintiff, as a result, has been damaged [*Id*. ¶ 95]. Plaintiff seeks the unpaid balance, interest at the rate of ten percent from May 12, 2023, and costs and attorney's fees [*Id*.].

Plaintiff asks that the Court award the unpaid principal balance in the amount of $3,525,504.63 and contractual interest in the amount of $391,185.45 against Defendants BaronHR, LLC, BaronHR West, Inc., BaronHR Hospitality, LLC, BaronTransport, LLC, and Legendary Staffing, Inc. [Doc. 103 p. 3]. Mr. Goble states that the "Baron Companies did make several payments" on the Note [Doc. 141-1 ¶ 5]. "After application of all payments and credits," the principal balance was $3,525,504.63 on May 12, 2023 [*Id*.]. He asserts the principal balance remains at this amount [*Id*.]. Pursuant to Section II.D. of the Third Baron Note, which incorporates the "maximum effective interest rate per annum pursuant to T.C.A. § 47-14-103" [Doc. 17-7 p. 1], Mr. Goble calculates interest at a daily rate of $965.89 [Doc. 141-1 ¶ 6]. *See* Tenn. Code. Ann. § 47-14-103(3) (providing for a maximum 10% interest rate). From May 12, 2023, to June 18, 2025, he calculates a total of $741,803.52 in interest due to Plaintiff [*Id*.].

---

[5]     That provision provides: "If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance shall become due immediately at the option of [Plaintiff] and at the maximum effective interest rate per annum pursuant to T.C.A. § 47-14-103" [Doc. 17-7 p. 1].

The allegations taken as true in the First Amended Complaint show that the Baron Entities are liable for damages in the amount of $4,267,308.15.

### 2. Counts Two through Five – Non-Payment of Invoices

Counts Two through Five are breach of contract claims against BaronHR, West, Inc, Legendary Staffing, Inc., BaronHR, LLC, and BaronHR Hospitality, LLC [Doc. 17 ¶¶ 97–116]. Plaintiff alleges that each of these Defendants agreed to receive Plaintiff's ASO services and executed an ASO Agreement, a contract [*Id*. ¶¶ 21, 27–33, 98, 103, 108 & 113]. As the allegations which are taken as true explain, these entities failed to pay the net unpaid balance of the invoices within the required ten-day period, and this failure to pay constitutes a material breach of the ASO Agreements [*Id*. ¶¶ 99, 104, 109 & 114]. More specifically, Plaintiff alleges that these Defendants failed to pay the net unpaid balances, as set forth below, and failed to provide any notice that they disputed the invoices within the ten-day period or otherwise:

| Defendant | Net Unpaid Balance |
|---|---|
| BaronHR West | $2,399,726.47 |
| Legendary Staffing, Inc. | $510,108.04 |
| BaronHR, LLC | $34,887.83 |
| BaronHR Hospitality, LLC | $8,764.82 |

[*Id.*]. Plaintiff claims it has been damaged as a result of Defendants' failure to pay, and it seeks discretionary pre-judgment interest pursuant to Tenn. Code Ann. § 47-14-123, late fees in the amount of $100 per unpaid invoice under Section 4(a) of the agreements beginning on July 11, 2023, and attorney fees [*Id.* ¶¶ 100, 105, 110 & 115].

In support of default judgment, Plaintiff submitted copies of a general ledger account showing the unpaid invoices for the Post-Third-Baron-Note Obligations [Doc. 141-1 ¶¶ 8–10, 14]. As of January 31, 2024, the Defendants owed the following in unpaid invoices, and as of the date of Mr. Goble's affidavit, the invoices have not been paid:

| Defendant | Net Unpaid Balance as of 1/31/24 |
|---|---|
| BaronHR West | $3,324,206.17 |
| Legendary Staffing, Inc. | $573,360.40 |
| BaronHR, LLC | $13,689.14 |
| BaronHR Hospitality, LLC | $14,374.82 |

[*Id.* ¶¶ 10, 14, 18 & 22]. Under Section 4(a) of the ASO Agreements, Defendants were obligated to pay a late fee of $100.00 if they failed to make timely payments or pay the entire balance when due [*See* Docs. 17-1 p. 3; 17-2 p. 3, 17-4 p. 3; & 17-5 p. 3]. Mr. Goble asserts that each Defendant did not pay the following number of invoices:

| Defendant | Number of Late Invoices | Total |
|---|---|---|
| BaronHR West | 116 | $11,600.00 |
| Legendary Staffing, Inc. | 57 | $5,700.00 |
| BaronHR, LLC | 36 | $3,600.00 |
| BaronHR Hospitality, LLC | 21 | $2,100.00 |

[Doc. 141-1 ¶¶ 12, 16, 20 & 24].

Plaintiff also seeks discretionary pre-judgment interest under Tenn. Code Ann. § 47-14-123. At the hearing, counsel for Plaintiff asserted that the Court should exercise its discretion to award this interest. In light of Plaintiff's arguments made at the hearing,[6] the undersigned recommends that the District Judge exercise his discretion to award pre-judgment interest in the following amounts for the period of January 31, 2024, to June 18, 2025:

---

[6] Tennessee courts consider three factors when determining whether to award prejudgment interest: "(1) whether such an award is fair; (2) whether the 'amount of the obligation is certain, or can be ascertained by a proper accounting'; and (3) whether the amount is 'disputed on reasonable grounds.'" *Kova Bristol Tenn 1894, LLC v. Bristol Pres., LLC*, No. 219CV00084, 2020 WL 13443413, at *2 (E.D. Tenn. Oct. 5, 2020) (quoting *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). All three factors favor an award of prejudgment interest here.

| Defendant | Pre-Judgment Interest (10%) |
|---|---|
| BaronHR West | $459,012.96 |
| Legendary Staffing, Inc. | $79,173.36 |
| BaronHR, LLC | $1,890.00 |
| BaronHR Hospitality, LLC | $1,985.76 |

[Doc. 141-1 ¶¶ 11, 15, 19 & 23].

In total, relying upon Mr. Goble's affidavit, Plaintiff has shown the following damages for Counts Two through Five:

| Defendant | Total Damages |
|---|---|
| BaronHR West | $3,794.819.13 |
| Legendary Staffing, Inc. | $658,233.76 |
| BaronHR, LLC | $19,179,14 |
| BaronHR Hospitality, LLC | $18,460.58 |

[*Id.* ¶¶ 13, 17, 21 & 25].

### 3.    Count Six – Non-Payment of Audit Invoices

Count Six is a breach of contract claim for non-payment of audit invoices against the Baron Entities [Doc. 17 ¶¶ 117–21]. Plaintiff alleges that the Baron Entities failed to pay the amounts owed as required in the First Baron Audit Invoice, and because they failed to provide notice that they disputed the invoice within the required ten days, the invoice is now due and owing [*Id.* ¶ 119]. Plaintiff claims that payment is a material obligation of the Baron ASO Agreements and failure to pay constitutes a material breach [*Id.*]. As a result, Plaintiff asserts it is damaged [*Id.* ¶ 120]. Plaintiff seeks the unpaid balances, discretionary pre-judgment interest pursuant to T.C.A. § 47-14-123, late fees in the amount of $100 per unpaid invoice under Section 4(a) of the agreements, and attorney fees [*Id.* ¶ 120].

The allegations taken as true in the First Amended Complaint show that the Baron Entities failed to pay the amounts owed by them as set forth on the First Baron Audit Invoice, and that Plaintiff has been damaged as a result.

According to the affidavit of Mr. Goble, as a result of the First SUNZ Audit, Plaintiff invoiced the Baron Entities on March 31, 2023, under the ASO Agreements as follows:

| Defendant | Amount |
|---|---|
| BaronHR | $17,947.60 |
| BaronHR West | $1,707,252.65 |
| Hunter Staffing | $1,132.51 |
| BaronHR Hospitality | $8,623.50 |
| Baron Transport[7] | ($7,336.21) |
| Legendary Staffing | $517,713.71 |

[Doc. 141-1 ¶ 27].

Plaintiff also seeks discretionary pre-judgment interest under Tenn. Code Ann. § 47-14-123. At the hearing, counsel for Plaintiff asserted that the Court should exercise its discretion to award this interest. In light of Plaintiff's arguments made at the hearing [*see supra* p. 16 n.6], the undersigned recommends that the District Judge exercise his discretion to award pre-judgment interest in the following amounts for the period of April 30, 2023, to June 18, 2025, in the amounts calculated by Mr. Goble:

| Defendant | Per Diem | Days | Total |
|---|---|---|---|
| BaronHR | $4.92 | 780 | $3,837.60 |
| BaronHR West | $467.74 | 780 | $364,837.20 |
| Hunter Staffing | $0.31 | 780 | $241.80 |
| BaronHR Hospitality | $2.36 | 780 | $1,840.80 |
| Baron Transport | ($2.01) | 780 | ($1,567.80) |
| Legendary Staffing | $141.83 | 780 | $110,627.40 |

[*Id*. at 7–8].

For the Second SUNZ Audit, Plaintiff invoiced the Baron Entities on June 10, 2024, under the ASO Agreements as follows:

---

[7]    BaronTransport was entitled to a credit [Doc. 141-1 ¶ 27].

| Defendant | Amount |
|---|---|
| BaronHR | $196,113.05 |
| BaronHR West | $4,150,090.20 |
| Hunter Staffing | $1,029.55 |
| BaronHR Hospitality | $99,954.85 |
| Baron Transport | $13,829.60 |
| Legendary Staffing | $1,270,378.27 |

[*Id*. ¶ 30]. Plaintiff also seeks discretionary pre-judgment interest under Tenn. Code Ann. § 47-14-123. At the hearing, counsel for Plaintiff asserted that the Court should exercise its discretion to award this interest. In light of Plaintiff's arguments made at the hearing [*see supra* p. 16 n.6], the undersigned recommends that the District Judge exercise his discretion to award pre-judgment interest in the following amounts for the period of July 10, 2024, to June 18, 2025, in the amounts calculated by Mr. Goble:

| Defendant | Per Diem | Days | Total |
|---|---|---|---|
| BaronHR | $53.72 | 342 | $18,372.24 |
| BaronHR West | $1,137.01 | 342 | $388,857.42 |
| Hunter Staffing | $0.28 | 342 | $95.94 |
| BaronHR Hospitality | $27.38 | 342 | $9,363.96 |
| Baron Transport | $3.79 | 342 | $1,296.18 |
| Legendary Staffing | $348.05 | 342 | $119,033.10 |

[Doc. 141-1 ¶ 32.].

In total, relying upon Mr. Goble's affidavit, Plaintiff has shown the following damages for Count Six, which total $8,993,564.94:

| Defendant | Amount |
|---|---|
| BaronHR | $236,270.49 |
| BaronHR West | $6,611,037.47 |
| Hunter Staffing | $2,499.62 |
| BaronHR Hospitality | $119,783.11 |
| Baron Transport | $6,221.77 |
| Legendary Staffing | $2,017,752.48 |

[*Id*. ¶ 34].

### 4. Count Seven – Breach of Contract/Guaranty of Third Baron Note by Defendant Perez

In Count Seven, Plaintiff seeks to hold Defendant Perez liable for the Baron Entities breach of the Third Baron Note because he guaranteed to perform the payment obligations of the Baron Entities under the note, and he failed to do so [Doc. 17 ¶¶ 122–25]. Plaintiff claims it has been damaged as a result of this material breach and seeks the unpaid balance of the note, interest under Section II.D. of the Third Baron Note, and attorney fees [*Id*. ¶ 125].

The allegations taken as true in the First Amended Complaint show that Defendant Perez is liable for damages, which as noted above with respect to Count 1, totals $4,267,308.15 [Doc. 141-1 ¶ 35].

### 5. Count Eight – Breach of Contract/Guaranty of ASO Agreements by Defendant Perez

In Count Eight, Plaintiff seeks to hold Defendant Perez liable for the Baron Entities' breach of the Post-Third-Baron-Note Obligations because he guaranteed to perform the payment obligations of the Baron Entities, and he failed to do so [Doc. 17 ¶¶ 127–33]. Plaintiff claims it has been damaged as a result of this material breach and seeks the unpaid Post-Third-Baron-Note Obligations, the unpaid First Baron Audit Invoice, discretionary prejudgment interest under T.C.A. § 47-14-123, late fees for each unpaid invoice under Section 4(a) of the ASO Agreements, and attorney fees [*Id*. ¶ 133].

The allegations taken as true in the First Amended Complaint show that Defendant Perez is liable for damages, which as noted above with respect to Counts Two through Six, total $13,469,244.07 [Doc. 141-1 ¶ 36].

### B. Count Nine – Fraud Against Defendant Perez

In Count Nine, Plaintiff asserts fraud against Defendant Perez [Doc. 17 ¶¶ 135–39]. Plaintiff claims that "the actions by Perez in causing the BaronHR West and Legendary Staffing payroll information to be underreported to Plaintiff during the policy period October 1, 2021, to October 1, 2022, and also the policy period October 1, 2022, through termination of the Baron ASO Agreements in May 2023 constitute frauds within the meaning of T. C. A. § 29-39-104(a)" [*Id.* ¶ 136]. Plaintiff further asserts that Defendant Perez's "conduct in causing the said payroll information to be underreported occurred between the first policy period October 1, 2021, and October 1, 2022, and the second policy period after October 1, 2022, through termination of the Baron ASO Agreements in May 2023 was intentional within the meaning of T. C. A. § 29-39-104(a)" [*Id.* ¶ 137]. As a result, Plaintiff has been damaged because it has had to pay SUNZ for the First SUNZ Audit and will have to pay SUNZ for the second SUNZ Audit [*Id.* ¶ 138]. Plaintiff seeks the amount due as a result of the First SUNZ Audit and Second SUNZ Audit and punitive damages pursuant to T.C.A. § 29-39-104(a).

Under Tennessee law, the elements of fraud are that the defendant falsely represented a present or past material fact, either knowing it was false, without believing in its truth, or recklessly; on which the plaintiff reasonably relied; sustaining damages as a result. *Hodge v. Craig*, 382 S.W.3d 325, 342–43 (Tenn. 2012). The allegations taken as true in the First Amended Complaint show that Plaintiff has sufficiently pleaded facts to demonstrate each of these elements [*See generally*, Doc. 17 ¶¶ 59–67 & 74–78].

With respect to compensatory damages, Mr. Goble states that Plaintiff had to pay SUNZ additional premiums and assessments on May 8, 2023; specifically for BaronHR West it had to pay $736,712.36, and for Legendary Staffing it had to pay $211,295.41 [Doc. 141-1 ¶ 37]. For the

Second SUNZ Audit, Mr. Goble states that Plaintiff had to pay SUNZ additional premiums and assessments on June 10, 2024; specifically for BaronHR West it had to pay $1,456,172.00, and for Legendary Staffing it had to pay $445,746.76 [*Id.*¶ 39]. In total, relying upon Mr. Goble's affidavit, Plaintiff has shown that damages for Count Nine total $2,192,884.36 for BaronHR West and $657,042.17 for Legendary Staffing.[8]

Mr. Goble calculates pre-judgement interest [Doc. 141-1 ¶¶ 38, 40], but Plaintiff does not seek pre-judgment interest with respect to this claim [*See* Doc. 17 ¶¶ 135–39]. Rule 54(d) provides, "A default judgment must not different in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(d). The undersigned therefore declines to recommend an award of prejudgment interest on damages for Count Nine. *United States v. Owens*, No. 13-02984, 2017 WL 1058391, at *7 (W.D. Tenn. Mar. 20, 2017) (declining to award prejudgment interest requested in a motion for default judgment because the complaint did not seek it).

At the hearing, Plaintiff asserted that it seeks no more than the statutory cap on punitive damages; that is, $500,000.00 [Doc. 141-1 ¶ 44]. A court may award punitive damages on default judgment. *Davis v. Brown*, 23 F. App'x 504, 506 (6th Cir. 2001) (affirming award of punitive damages in default judgment). Under Tennessee law, punitive damages are available when a defendant has acted intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The Tennessee Supreme Court has said:

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person

---

[8]     Plaintiff's math is incorrect. Plaintiff totals $657,014.76 for Legendary Staffing, but the correct total is $657,042.17 ($211,295.41 + $445,746.76).

is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Id.*; *see also Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F. Supp. 2d 885, 891 (M.D. Tenn. 2011) ("Tennessee law allows punitive damages for tort claims involving fraud[.]" (citation omitted)). Plaintiff's allegations, taken as true, in combination with the defaulting conduct in this case [*see* Doc. 99], show that Defendant Perez intentionally misrepresented information related to the covered employees with intent to mislead Plaintiff to gain an undue advantage. The undersigned therefore recommends that the District Judge award punitive damages in the amount of $500,000.00.

### C. Count Ten – Vicarious Liability Against BaronHR West and Legendary Staffing

In Count Ten, Plaintiff asserts a claim for vicarious liability against BaronHR and Legendary Staffing [Doc. 17 ¶¶ 140–44]. Plaintiff asserts that in committing fraud, Defendant Perez was "acting in a management capacity in the course and scope of his employment and/or agency with/for BaronHR West and Legendary Staffing within the meaning of T.C.A. § 29-39-104(g)(1)(A) and (3) in that Perez had the authority to set policy and exercise control, discretion, and independent judgment over a significant scope of the business of BaronHR West and Legendary Staffing" [*Id.* ¶ 141]. Plaintiff further asserts that "BaronHR West and Legendary Staffing otherwise authorized, ratified, or approved the underreporting of the foregoing false payroll information constituting the said frauds and as such the frauds perpetrated on Plaintiff was with the knowledge of BaronHR West and Legendary Staffing that such frauds would result in injury to Plaintiff within the meaning of T. C. A. § 29-39-104(g)(1)(C)" [*Id.* ¶ 142].

23

"The concept of agency 'includes every relation in which one person acts for or represents another.'" *Richey v. Motion Indus., Inc.*, No. 3:07-CV-466, 2009 WL 1076200, at *3 (E.D. Tenn. Apr. 21, 2009) (quoting *White v. Revco Disc. Drug Centers, Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000)). "[W]hen an agency relationship exists, the principal may be bound by the acts that his agent performs on his behalf and within the actual or apparent scope of the agency." *Id.* (quoting *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008)). "A basic principle of agency is that a corporation can act only through the authorized acts of its corporate directors, officers, and other employees and agents. Thus, the acts of the corporation's agents are attributed to the corporation itself." *Hall v. Crenshaw*, 449 S.W.3d 463, 472 (Tenn. Ct. App. 2014) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002)).

*Respondeat superior* holds an employer liable for torts that its employees commit while acting within the scope of their employment. *Warren v. Warrior Golf Cap., LLC*, 126 F. Supp. 3d 988, 996 (E.D. Tenn. 2015) (citation omitted)). This has three elements: (1) the person who caused the injury was an employee; (2) the employee was on the employer's business; and (3) that the employee was acting within the scope of his employment when the injury occurred. *Id.* (citation omitted); *see also Close v. Cool Runnings Express, Inc.*, No. 1:18-CV-110, 2021 WL 9472254, at *3 (E.D. Tenn. Feb. 11, 2021) (identifying a list of relevant factors to consider in determining whether an employee was performing duties within the scope of employment). By contrast, an employer is not liable for the acts of an independent contractor. *Hibbs v. Hernandez*, No. 1:04-CV-204, 2006 WL 389857, at *4 (E.D. Tenn. Feb. 17, 2006).

"The most indicative factor in determining whether a principal-agent relationship exists is the right of a principal to control the conduct of the work of agent." *Bowman v. Benouttas*, 519 S.W.3d 586, 597 (Tenn. Ct. App. 2016) (citation omitted).

Taking the allegations of the Complaint as true, Plaintiff has shown that Defendant Perez was acting on behalf of Defendant BaronHR West and Defendant Legendary Staffing. Therefore, Defendant BaronHR West and Defendant Legendary Staffing are vicariously liable to Plaintiff for the acts of Defendant Perez.

According to the affidavit of Mr. Goble, BaronHR West received 77% of the benefit of the fraud damages, and Legendary Staffing received 23% of the benefit of the fraud damages [Doc. 141-1 ¶¶ 46–47]. He allocates of the $500,000 punitive damages $385,000 to BaronHR West and $115,000 to Legendary Staffing [*Id.*]. Thus, BaronHR West is vicariously liable in the amount of $2,577,884.36, and Legendary Staffing is vicariously liable in the amount of $772,042.17.[9]

### D. Count Eleven – Joint Venture/Common Enterprise Liability

In Count Eleven, Plaintiff alleges that all the Baron Entities acted as a joint venture/common enterprise because:

(a) each of them shared in a common purpose by agreement, express or implied, among them;

(b) with an equal right on the part of each to control both the venture as a whole and any relevant instrumentality. Specifically, each Baron Entity was under the same common control by Perez;

(c) the common purpose of the venture was for business profit, expense sharing, and/or some other comparable arrangement; and

(d) each Baron entity shared in the efforts, property, money, skill, and knowledge of and for the venture.

---

[9]     The Court arrives at this figure for BaronHR West, Inc. by adding $736,712.36 (First SUNZ Audit Premium), $1,456,172 (Second SUNZ Audit Premium), and $385,000 (the share of punitive damages).

The Court arrives at this figure for Legendary Staffing, Inc. by adding $211,295.41 (First SUNZ Audit Premium), $445,746.76 (Second Audit Premium), and $115,000 (the share of punitive damages).

25

[Doc. 17 ¶ 146]. Plaintiff therefore seeks liability for damages caused to it by one Baron Entity to be imputed to all the other Baron Entities, jointly and severally [*Id*. ¶ 147].

"Joint enterprise liability is not a separate cause of action, but rather, a theory of liability." *Stewart v. Deutsche Bank Nat'l Trust Co.*, No. 3:08-cv-475, 2010 WL 4004670, at *11 (E.D. Tenn. Oct. 12, 2010) (footnote omitted). It is described in the following way:

> The doctrine of vicarious responsibility in connection with joint enterprises rests upon an analogy to the law of partnership. In a partnership, there is a more or less permanent business arrangement, creating a mutual agency between the partners for the purpose of carrying on some general business, so that the acts of one are to be charged against another. A 'joint enterprise' is something like a partnership, for a more limited period of time, and a more limited purpose. It is a undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest.

*Id.* at *11–12 (quoting *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995)). "[T]he 'elements that need to be shown to establish a joint venture among several parties are a common purpose, some manner of agreement among them, and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality.'" *Id.* at *12 (quoting *Fain*, 909 S.W.2d at 793).

Taking the allegations in the First Amended Complaint as true, it seems that Plaintiff has alleged sufficient facts to show a joint venture among the Baron Entities. But Plaintiff has pointed to no authority that would allow the undersigned to recommend that the District Judge grant default judgment to impose joint enterprise liability to the claims asserted here. Rather, the joint enterprise liability theory serves to "impute the negligence of one of the parties to the other[.]" *Schwartz v. Johnson*, 280 S.W. 32, 33 (Tenn. 1926) (citation omitted); *see also F.S. Sperry Co., Inc. v.*

*Schopmann*, 304 F. Supp. 3d 694, 703 (E.D. Tenn. 2019) ("The Court has likewise been unable to locate any Tennessee authority that supports plaintiff's joint enterprise theory.").

## IV.     CONCLUSION

Based upon these findings and taking all well-pleaded allegations in the Complaint as true, the undersigned **RECOMMENDS**[10] that Plaintiff's Motion for Entry of Default [**Doc. 103**] be **GRANTED IN PART AND DENIED IN PART**. The undersigned recommends that Plaintiff be directed to modify for entry its proposed judgment [Doc. 141-2] consistent with the recommendations herein.[11] The Court **DIRECTS** the Clerk's Office to mail Defendants a copy of this Report and Recommendation.

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[10]     Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchr's*, 829 F.2d 1370 (6th Cir. 1987).

[11]     Specifically, the undersigned recommends that prejudgment interest not be awarded for Count Nine, which will affect the total calculations in Count Ten. The undersigned further recommends that default judgment not be entered on Count Eleven. Finally, the Court observes a typographical error in Count Seven [Doc. 141-2], which should reflect $4,267,308.15 (not fourteen cents).

27